# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**THERESE J. MONSEAU,**

    **Plaintiff,**

**v.**                                            **Civil Action No.: 5:09-CV-45**
                                                  **JUDGE STAMP**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

### REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [16]

On April 30, 2009, Plaintiff, Therese J. Monseau ("Plaintiff"), by counsel Steven M. Recht, Esq. filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) and 1383(c)(3). On July 6, 2009, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On August 4, 2009/October 8, 2009 and September 30, 2009, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [16] [14].

Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

# I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits, hereinafter "DIB" and supplemental security income, hereinafter, "SSI" in April 2004, alleging disability since August 2003 due to idiopathic sensory neuropathy, fibromyalgia, hypertension, hypothyroidism, disc protrusion at C5-6, and osteophytes at C4-5 and C5-6 ( R. 65-67, 70, 460-62). The applications were denied initially and on reconsideration ( R. 55-57, 61-63, 464-66, 470-72).

At Plaintiff's request, an administrative law judge (ALJ) held a hearing on February 27, 2007, when Plaintiff, who was represented by an attorney, testified, along with a vocational expert. ( R. 26-52).

The ALJ issued a decision on March 8, 2007, finding that the Plaintiff had the following severe impairments: fibromyalgia and monoclonal gammopathy resulting in sensory neuropathy; and the following non severe impairments: Reynaud's phenomenon and asthma. ( R. 16). However the ALJ further found that none of these impairments or combinations thereof met the criteria for the listed impairments in 20CFR Part 404, Subpart P, Appendix 1 (20CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926). ( R. 17). The ALJ further found that although Plaintiff could no longer perform any of her past relevant work, she could nevertheless perform a limited range of sedentary work, which would allow her to remain seated most of the workday and would require lifting no more than ten pounds occasionally. ( R. 17-19, 50-51). Relying upon vocational expert testimony, the ALJ found that other work existed in the national economy that Plaintiff could perform, such as the jobs of surveillance system monitor, telephone worker or credit checker ( R. 20, 50). In so concluding, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Act and therefore not entitled to SSI or DIB. ( R. 21).

On May 9, 2007, the Plaintiff requested review of the ALJ decision dated March 8, 2007. ( R. 9). On February 27, 2009, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision for judicial review pursuant to 42 U.S.C.§405(g) and 1383(c)3 ( R. 5-7). On April 30, 2009, the Plaintiff filed a complaint in this Court to obtain judicial review of the final decision of Commissioner. Presently before the Court are the parties' respective motions for summary judgment [16] and [14].

## II. STATEMENT OF FACTS

Plaintiff was forty-six years old at the time of the ALJ's decision, and is therefore considered a "younger person" according to the regulations promulgated under the authority of the Act. 20CFR§§404.1563, 416.963 (2009). She has a high school education and four (4) years of college education in computer science but did not receive her college degree. ( R. 32). Plaintiff has worked as a bookkeeper, budget analyst, systems analyst, accountant, data base administrator, and controller ( R. 20, 49-50).

Plaintiff was treated for fractured right toes in February 2004 after she fell down steps ( R. 122). The physicians notes indicate that she also had a foot injury in September of 2003 that was never adequately addressed ( R. 122) At the time of treatment for her foot injury, it was discovered that Plaintiff's blood pressure was elevated ( R. 124).

In March 2004, Plaintiff complained of parasthesia in her hands. ( R. 137) By May 2004, foot x-rays showed excellent filling in of bone of the fracture, and Plaintiff had no tenderness or discomfort to walking ( R. 140).

Mark Wilson, M.D., examined Plaintiff in July 2004 ( R. 143). Plaintiff complained of intermittent numbness from the elbow into the ring finger ( R. 143). On physical examination,

Plaintiff ambulated with a normal gait, and was able to get on the examination table without assistance. ( R. 144). Plaintiff was able to walk on her heels and toes, and was able to perform a full squat ( R. 145). Plaintiff's extremities did not reveal any atrophy ( R. 144). She had 5/5 strength in all of her extremities and she demonstrated good use of both of her hands. ( R. 145). Range of motion of the cervical spine was full ( R. 145). Dr. Wilson opined that Plaintiff was able to sit, stand, walk, and that she could lift /carry in the light range of exertion ( R. 145). Dr. Wilson specifically noted that Plaintiff demonstrated good use of both hands, and she would be able to handle objects. ( R. 146)

An MRI of the Plaintiff's lumbar spine performed in August 2004 was negative ( R. 163). An MRI of Plaintiff's cervical spine performed in August 2004 showed a small central disc protrusion at C5-6 ( R. 163).

Two state agency physicians reviewing Plaintiff's claim for benefits in July 2004 and January 2005, respectively, both opined that Plaintiff had the physical residual functional capacity to perform a limited range of light work ( R. 153-60, 179-86).

Plaintiff was treated by Dr. Alayli, a rheumatologist, in January of 2005 ( R. 198). Plaintiff reported a history of Reynaud's disease ( R. 198). On physical examination, Plaintiff's hands and wrists showed no synovitis ( R. 201). Plaintiff had an excellent hand grip ( R. 201). Dr. Alayli diagnosed diffuse aches and pains most consistent with fibromyalgia ( R. 201). In February 2005, Dr. Alayli advised the Plaintiff that he could not diagnose her with lupus, and that patients with fibromyalgia need to sleep better and need to exercise. ( R. 195). During a follow up examination with Dr. Alayli in January of 2006, Plaintiff advised Dr. Alayli that she was doing ok but still occasionally had some diffuse aches and pains in the lower back ( R. 324). Plaintiff stated that she

was trying to do some exercises off and on but that she does not exercise on a regular basis. ( R. 324).

In April of 2006, the Plaintiff saw Dr. Brizuela, who ordered an EMG study of the Plaintiff. This study showed mild compromise in CMUP amplitudes suggestive of mild axonal neuropathy ( R. 402). In May 2006, Dr. Brizuela diagnosed Plaintiff with autoimmune mediated sensory neuropathy, for which she was treated with Zanaflex ( R. 393). Dr. Brizuela reported in September 2006 that Plaintiff had not been compliant with the Zanaflex ( R. 457).

A vocational expert testified at the administrative hearing ( R. 50) The ALJ asked the vocational expert to assume an individual of Plaintiff's age, education, and experience who was restricted to sedentary work and who because of the side effects of medication, would have difficulty sustaining concentration upon detailed or complex tasks ( R. 50). The vocational expert testified that despite those limitations, such an individual could perform sedentary work as a surveillance system monitor, telephone information clerk, and credit checker ( R. 50).

### III. Administrative Law Judge's Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C. F.R. §§ 404.1520 and 416.920, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
2. The claimant has not engaged in substantial gainful activity since August 1, 2003, the alleged onset date (20CFR 404.15209b), 404.1571 *et seq.*, 416.920 (b) and 416.971 *et seq.*).
3. The claimant has the following severe impairments: fibromyalgia and a monoclonal gammopathy resulting in sensory neuropathy. 20CFR§§404.1520( c) and 416.920( c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20CFR Part 404, Subpart P, Appendix 1 (20CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform tasks at the sedentary exertional level, remaining seated most of the work day and lifting no more than ten pounds occasionally. Due to sensations of pain and side effects of medications, she will have difficulty in performing work requiring sustained attention upon detailed or complex tasks.
6. The claimant is unable to perform any past relevant work.20CFR404.1565 and 416.965).
7. The claimant was born on November 8, 1960 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
8. The claimant has at least a high school education and is able to communicate in English (20CFR404.1564 and 416.964)
9. Transferability of job skills is not material to determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20CFR404.1560( c), 404.1566, 416.960( c) and 416.966).
11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2003 through the date of this decision (20 CFR 404.1520(g)416.920(g)).

( R. 15-21).

## IV. CONTENTION OF PARTIES

**A.** **Plaintiff contends.**

**1**. Plaintiff contends that the ALJ erred in determining that Ms. Monseau could perform other generally available work by finding that she was not credible, that she exaggerated her symptoms and by disregarding her testimony. (See Pl's br. Doc. 11).

**2.** The Plaintiff contends that the ALJ had a disqualifying conflict of interest which made him prejudiced or partial in the hearing of this matter.(See Pl.'s br. Doc. 11)

**B.** **Commissioner contends**

1. The Commissioner contends that the ALJ did properly assess Plaintiff's credibility

according to the regulation governing the evaluation of subjective complaints at 20CFR § 404.909 and that the Commissioner has met his burden of producing vocational evidence of other work that Plaintiff could perform in the national economy that accommodate her limitations.

2. The Commissioner contends that the ALJ did not have a disqualifying conflict of interest and that Plaintiffs claims to that effect are baseless.

## V. DISCUSSION

### A. Standard for Judicial Review of a Decision by the ALJ

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de*

> *novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). With these standards in mind, the Court reviews the decision by the ALJ.

### B. Standard for Disability and Five-Step Evaluation Process

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and therefore entitled to disability insurance benefits, the Social Security Administration has established a five-step sequential evaluation process. The five steps are as follows (including Residual Functional Capacity Assessment prior to Step Four):

Step One: Determine whether the plaintiff is engaging in substantial gainful activity;

Step Two: Determine whether the plaintiff has a severe impairment;

Step Three: Determine whether the plaintiff has "listed" impairment;

* Residual Functional Capacity Assessment *<br>(Needs to be Determined Before Proceeding to Step Four)

Step Four: Compare residual functional capacity assessment to determine whether the plaintiff can perform past relevant work;

Step Five: Consider residual functional capacity assessment, age, education, and work experience to determine if the plaintiff can perform any other work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process and coming to a decision, the ALJ makes findings of fact and conclusions of law. In this particular case there are two issues raised by the Plaintiff. The first issue is whether the ALJ had a conflict of interest that he did not disclose because he also has Reynaud's disease. The second issue is whether the Commissioners decision that the Plaintiff could perform the limited range of sedentary work identified by the vocational expert is supported by substantial evidence. This Court has reviewed the decision of the ALJ and the evidence contained in the record of this case.

### C. **Steps of ALJ Assessment that are NOT in dispute**

The parties do not dispute the ALJ's findings through Step Two and part of Step Three of the Analysis. At the end of Step Two the ALJ had found two severe impairments: fibromyalgia and a monoclonal gammopathy resulting in sensory neuropathy and two non severe impairments: Reynaud's phenomenon and asthma. Step Three of the evaluation process requires first that the ALJ determine whether the Plaintiff has a "listed" impairment. The ALJ found at Step Three that the "Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20CFR Part 404, Subpart P, Appendix 1..." There is no dispute regarding these findings. ( R. 30) In fact, her attorney states at the February 27, 2007, hearing that:

> "The Claimant is suffering from a variety of different ailments. I think that taken independently none rise obviously to the level of a listing, however, taken together and given the longevity of, of her problems, reduces her residual functional capacity to the point where she , she can't possibly conduct work if for no other reason than

the medi– the strong medication that she's on, which makes her groggy and, and drowsy during the day.... And based on that, her, her ability to find work in the economy would be impossible."

( R. 31).

Since the ALJ found that there was no "listed" impairment, the second part of Step Three requires the ALJ to determine the plaintiff's residual functional capacity. This is based on the medical evidence of record, the Plaintiff's testimony, and her credibility. Residual Functional Capacity is a determination of the Plaintiff's remaining capacity to perform work-related activities despite any impairment. (20 CFR 416.945)

Plaintiff asserts that the ALJ erred in this part of his analysis. Specifically, Plaintiff contends that the ALJ erred in determining that Ms. Monseau could perform other generally available work by finding that she was not credible, that she exaggerated her symptoms and by disregarding her testimony. (Pls Br. p 9 Doc. 11). The Court will determine whether the ALJ applied the correct law in his analysis of Plaintiff's Residual Functional Capacity and in evaluating Plaintiff's credibility and whether his decision was supported by substantial evidence, in accordance with 42 U.S.C. § 405(g) and *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990).

## D. DISCUSSION OF CONTENTIONS OF PARTIES

### 1a. Review of ALJ's Assessment of Credibility

The law governing the ALJ's credibility analysis is as follows:

> The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and

laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms...

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, ***the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record***. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4)...

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529( c)and § 416.929( c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's

functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p (emphasis added).

The Court finds that the ALJ correctly applied the two-step process and considered the factors enumerated in SSR 96-7p, 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility as is discussed in steps 1 and 2 below.

**(Step 1) Is there a medically-determinable impairment that could reasonably be expected to cause the symptoms alleged?**

Although the ALJ did not find a "listed" impairment, the ALJ did find that the Plaintiff suffered from the following severe impairments: Fibromyalgia and monoclonal gammopathy resulting in sensory neuropathy and the following non-severe impairments: Reynaud's phenomenon and asthma. ( R.18)

**(Step 2) To what extent do these symptoms limit her ability to do basic work activities through evaluation of the intensity, persistence, and limiting effects of the individual symptoms.**

The Plaintiff contends that "One of the most egregious of Judge Kenworthy's errors of ignoring evidence was in his attempt to show that Ms. Monseau's testimony regarding ulcers was not supported by the medical evidence." ( Pls Brief, Doc 11). The ALJ questioned the Plaintiff about both mouth ulcers and digital[1] ulcers at the hearing as follows:

> "Q ...One of , one of the problems that arise with Reynaud's is
> ulcers or sores. Do you ever get any ulcers or sores?
> A Yes, I do, in my mouth.
> ...Q Does– when you get those, does it limit your daily activity at all or is
> it just sort of a nuisance?

---

[1] Digital ulcers appear on the fingers or toes.

> A I would say it's a nuisance, but my – they kind of affect my speech a little bit because my tongue kind of gets involved in that, my speech kind of gets weird and –
> Q Did – have you ever gotten them on your fingers or toes"
> A A couple of my toes.

( R. 43, transcript of February 27, 2007 hearing). There is very little in the medical records regarding Plaintiff's ulcers. However, on January 24, 2006, Dr. Alayli reports from his examination that Plaintiff "Denies any hx of any skin rashes, mouth ulcers, hair loss." ( R. 324). On January 20, 2005, Dr. Alayli reports from an exam that Plaintiff "...also said that her hands turn greenish, no bluish, she never had any digital ulcers as such." This directly contradicts her testimony at the hearing that she has had digital ulcers on her toes. Furthermore during that January 20, 2005 examination, Plaintiff states that "She does have a hx of mouth ulcers, and Raynauds [sic];..." ( R. 334). Regardless of whether the Plaintiff has a history of mouth ulcers or not, it is obvious from her testimony that these ulcers do not limit her daily activity and are more of a nuisance than anything. ( R. 43). Furthermore, the ALJ is correct in his statement that "the medical records of Dr. Alayli indicate that the Plaintiff has specifically denied having such complaints." ( R. 19, ALJ decision). On January 24, 2006, Dr. Alayli's medical records show that she denied a history of mouth ulcers. ( R. 324).

The Plaintiff also argues that the ALJ ignored Plaintiff's complaints of side effects from medication. While Plaintiff may have testified that her medication makes her drowsy to the point of precluding all work, the medical treatment notes do not reflect such extreme complaints. The medical records document only that Plaintiff experienced extreme drowsiness when taking Lyrica and therefore that medication was discontinued. ( R. 393) Furthermore, on September 26, 2006, Dr. John wrote that Plaintiff had been noncompliant with taking her Zanaflex. ( R.

457). In any event, the ALJ specifically considered Plaintiff's medication side effects by restricting her to sedentary work that would not require sustaining concentration upon detailed or complex tasks. ( R.50).

Other examples of how the medical records don't support the severity of Plaintiffs complaints are as follows. The Plaintiff complains of disabling pain, but Dr. Wilson's examination in July of 2004 indicated that Plaintiff could lift or carry in the light range of exertion and that Plaintiff demonstrated good use of both hands in handling objects ( R. 145-46). Furthermore, Dr. Alayli, a Rheumatologist, examined Plaintiff in January 2005 noting that Plaintiff had an excellent hand grip. ( R. 201). In addition, two state agency physicians reviewing Plaintiff's claim for benefit in July 2004 and January 2005, respectively, both opined that Plaintiff had the physical residual functional capacity to perform a limited range of light work ( R. 153-6, 179-86).

The ALJ wrote a very detailed synopsis of why the ALJ found that "The medical records do not document complaints of the degree of severity alleged [by] the claimant" and why "the claimant's testimony appears to be exaggerated." After a review of the record, the ALJ's consideration of the degree to which Plaintiff's subjective complaints are consistent with the objective evidence and other evidence is entirely consistent with the record, and is authorized by the regulation.

Therefore, the Court finds that the ALJ correctly applied the two-step process and considered the factors enumerated in SSR 96-7p, 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility and that his decision is supported by substantial evidence.

### 1b. Vocational Evidence of Other Work

A vocational expert testified at the administrative hearing ( R. 50). The Plaintiff has a high school education and around four (4) years of college studying Computer Science but she did not receive a college degree. ( R. 32). The Plaintiff has past relevant work as a bookkeeper, controller and systems analyst. ( R. 49). The ALJ determined from the vocational experts testimony that the Plaintiff would no longer be able to perform her past relevant work because of the side effects of the medication she was taking. ( R. 50). However, the vocational expert testified that there were other sedentary jobs such as surveillance system monitor, telephone information clerk and credit checker that were repetitive in nature and could be performed without sustained concentration. ( R. 50) The expert testified that these jobs exist in significant numbers in the national economy. ( R. 50, 51). Therefore the Commissioner has met his burden of producing valid vocational evidence of work that exists in the national economy that Plaintiff could perform.

## 2. Plaintiff's Contention regarding ALJ's "Conflict of Interest"

Administrative law judges are presumed to be unbiased. Schweiker v. McClure, 456 U.S. 188, 195 (1982). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Id.* at 196. The burden of making such a showing rests with the party asserting the bias. *Id.* at 196. Pursuant to 20CFR§§404.940, 416.1440, an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has an interest in the matter pending decision." "'Appearance of impropriety' standard of recusal of federal judges does not apply to administrative law judges; actual bias must be shown" Bunnell v. Barnhart, 336 F.3d 1112 (2003). In this case, Plaintiff has failed to show any actual bias on the part of the ALJ, and, in fact, the ALJ's decision is overwhelmingly

supported by substantial evidence as shown in the above discussion.

In conclusion, the ALJ found that based on the Plaintiff's application for a period of disability and DIB protectively filed on April 16, 2004, the Plaintiff has not been disabled under sections 216(I) and 223(d) of the Social Security Act and based on the Plaintiff's application for SSI protectively filed on April 16, 2004, the Plaintiff has not been disabled under section 1614(a)(3)(A) of the Social Security Act. ( R. 21).  The Court finds that the ALJ's decision is supported by substantial evidence.

## VI.     RECOMMENDATION AND CONCLUSION

For all the above reasons, the undersigned United States Magistrate Judge finds that the ALJ correctly applied the law and that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform other work in the national economy. The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[14]**, **DENY** Plaintiff's Motion for Summary Judgment **[16]**, and **AFFIRM** the Decision of the Administrative Law Judge.

The Court notes the Plaintiff's objections to the ruling.

Within ten (10) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Recommendation.  The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection.  The party shall also submit a copy of any objections to the Honorable Frederick P. Stamp, Jr.  Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation.  28 U.S.C. § 636(b)(1).   The Court directs the

Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: November 20, 2009**

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE